# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.C., a minor child, by and through her Guardian ad litem, Sheyla Aracely Crespo Anaya,<br><br>Plaintiff,<br><br>v.<br><br>HUNTERWOOD TECHNOLOGIES USA, LTD., et al.,<br><br>Defendants. | Case No.: 21cv888-AJB(LR)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING MINOR'S COMPROMISE PETITION**<br><br>**[ECF No. 39]** |

Currently before the Court is Minor Plaintiff V.C.'s January 19, 2023 Petition for Approval of Minor's Compromise ("Petition"). (ECF No. 39 ("Pet.").) This Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 17.1 of the United States District Court for the Southern District of California. After reviewing the Petition and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that District Judge Battaglia **GRANT** the Petition.

## I. BACKGROUND & PROCEDURAL HISTORY

This is a wrongful death case originally filed in Imperial County Superior Court that was removed to this Court on May 7, 2021. (See ECF No. 1.) Minor Plaintiff V.C.

("Plaintiff), by and through her guardian *ad litem* Sheyla Crespo alleges strict products liability, negligence, and breach of warranty claims against Defendant Hunterwood Technologies ("Defendant") arising from a 2019 incident in which Plaintiff's father, Ysamar Diaz, was killed while attempting to repair a malfunction on a hydraulic cylinder hose underneath the magazine clamp elevator of a hay press manufactured by Defendant. (See ECF No. 1-3 at 6.) The Complaint alleges that while performing maintenance on the hay press in the course of his duties as a mechanic at K&M Press in El Centro, the clamp elevator on the press actuated suddenly and without warning, crushing Mr. Diaz to death. (Id.) Plaintiff was four months old at the time of the accident. (See Pet. at 2.)

Defendant filed an answer to Plaintiff's Complaint on May 14, 2021 (see ECF No. 3) and an Early Neutral Evaluation Conference was held before then Magistrate Judge Ruth B. Montenegro on August 21, 2021. (See ECF No. 19.) After two modifications to the Scheduling Order extending various discovery deadlines (ECF Nos. 30; 34), the parties filed a notice of settlement in principle on November 17, 2022. (ECF No. 37.) The instant Petition was filed on January 19, 2023 (ECF No. 39), and Defendant filed a Notice of Non-Opposition to the Petition on February 8, 2023. (See ECF No. 40.)

## II.   LEGAL STANDARD

Courts have a special duty to safeguard the interests of litigants in civil litigation who are minors. See Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011); see also Fed. R. Civ. P. 17(c)(2) (district courts "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."). For proposed settlements in suits involving minor plaintiffs, this duty requires a district court "'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)); see also Salmeron v. United States, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected . . . even if the settlement

1    has been recommended or negotiated by the minor's parent or guardian ad litem."). Civil
2    Local Rule 17.1(a) contemplates that the Court will help satisfy the duty to safeguard a
3    minor's interests by providing that "[n]o action by or on behalf of a minor or incompetent
4    will be settled, compromised, voluntarily discontinued, dismissed or terminated without
5    court order or judgment." CivLR. 17.1(a). The rule requires the Court to determine if the
6    settlement is in the best interests of the minor and consider not only the fairness of the
7    amount of the settlement, but the structure and manner of distribution of the assets from
8    the settlement agreement.
9         The Ninth Circuit has explained that courts reviewing the settlement of a minor's
10   federal claims should "limit the scope of their review to the question whether the net
11   amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light
12   of the facts of the case, the minor's specific claim, and recovery in similar cases."
13   Robidoux, 638 F.3d at 1181–82. Courts should "evaluate the fairness of each minor
14   plaintiff's net recovery without regard to the proportion of the total settlement value
15   designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court
16   has no special duty to safeguard." Id. at 1182 (citing Dacanay, 573 F.2d at 1078). "So
17   long as the net recovery to each minor plaintiff is fair and reasonable in light of their
18   claims and average recovery in similar cases, the district court should approve the
19   settlement as proposed by the parties." Id.
20        The Robidoux decision was limited by the Ninth Circuit to "cases involving the
21   settlement of a minor's *federal* claims." Id. at 1179 n.2 (emphasis added). Where a
22   settlement involves state law claims on the other hand, federal courts are generally guided
23   by state law, rather than the principles in Robidoux. See, e.g., J.T. by & through Wolfe v.
24   Tehachapi Unified Sch. Dist., No. 1:16-cv-01492-DAD-JLT, 2019 WL 954783, at *2
25   (E.D. Cal. Feb. 27, 2019) (noting that federal courts generally require that claims by
26   minors be settled in accordance with applicable state law and that California law requires
27   court approval of the fairness and terms of the settlement); see also A.M.L. v. Cernaianu,
28

No. LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases).

The California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law. See Cal. Prob. Code § 3601. Under California law, the Court must evaluate the reasonableness of the settlement and determine whether the compromise is in the best interest of the minor. See Doe v. Lincoln Mil. Prop. Mgmt. LP, Case No.: 3:20-cv-00224-GPC-AHG, 2020 WL 5587488, at *4 (S.D. Cal. Sept. 18, 2020) (citing A.M.L., 2014 WL 12588992, at *3), report and recommendation adopted, 2020 WL 5810168 (S.D. Cal. Sept. 30, 2020). California law also requires a court to approve any reasonable expenses, costs, and attorneys' fees deducted from the settlement. See Cal. Prob. Code § 3601(a). The Court is given "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." Goldberg v. Super. Ct., 23 Cal. App. 4th 1378, 1382 (Cal. Ct. App. 1994); see also Pearson v. Super. Ct., 136 Cal. Rptr. 3d 455, 459 (Cal. Ct. App. 2012) (noting that the purpose of the court approval process "allows the guardians of a minor to effectively negotiate a settlement while at the same time protect the minor's interest by requiring court approval before the settlement can have a binding effect on the minor.").

District courts are split as to whether Robidoux applies when evaluating the settlement of a minor's state law claims. See A.M.L., 2014 WL 12588992, at *3. Although courts like the one in A.M.L. have noted that claims by minors should generally "be settled in accordance with applicable state law," the Ninth Circuit in Robidoux held that such an approach "places undue emphasis on the amount of attorneys' fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs." Id. at *2 (quoting Robidoux, 638 F.3d at 1181) (internal citations omitted). Some courts have placed more emphasis on applying Robidoux to the settlement of state law claims, while others have opted to only focus on state law when evaluating the settlement of state law claims. See, e.g., McLure v. Cyberonics, Inc., Case

No. SACV 20-1242 JVS(JCGx), 2021 WL 4935159, at *1 n.1 (C.D. Cal. Feb. 4, 2021) (collecting cases using both approaches).

Because the claims in this case are governed by California law, the Court will review the settlement with an emphasis on the state standard, which focuses on the best interests of the minor. To ensure that all potentially relevant factors are considered, however, the Court will also apply the Robidoux standard of evaluating whether the net amount distributed to the minor plaintiff—without regard to proportion of the settlement allocated to adult co-plaintiffs or attorneys' fees—is "fair and reasonable." 638 F.3d at 1182. The Court need not decide whether Robidoux controls if the settlement meets both federal and state standards. See, e.g., Greenberg v. Puppy Dogs & Ice Cream, Inc., Case No.: 20-cv-2125-LAB (DEB), 2021 WL 1753640, at *2 n.1 (S.D. Cal. Mar. 19, 2021) (citing A.M.L., 2014 WL 12588992, at *3) (collecting cases concluding that it is unnecessary to resolve whether Robidoux or state rules apply to the approval of a minor's compromise in cases involving state tort law claims where the proposed settlement would satisfy both standards), report and recommendation adopted, 2021 WL 2117192 (S.D. Cal. May 25, 2021).

### III.   DISCUSSION

The Petition notes that after attending private mediation, Plaintiff has decided to settle the case with the understanding that if the settlement is approved by the Court, Plaintiff will be forever barred from seeking any further recovery or compensation from Defendants on the claims that are proposed to be dismissed. (See Pet. at 3.) To safeguard the interests of the minor plaintiff in this case, the Court will evaluate the proposed settlement, the method of disbursing the minor plaintiff's net recovery, and the proposed attorneys' fees and costs.

**A.   The Proposed Settlement**

The precise terms and conditions of the Settlement are set forth in the Petition (ECF No. 39), the parties' Settlement Agreement (ECF No. 39-1, Lee Cirsch Decl. ("Cirsch Decl."), Ex. A), and the terms and conditions of the disbursement of settlement

funds through an annuity agreement for the minor plaintiff. (Cirsch Decl., Ex. B). In summary, Plaintiff agrees to release her claims against Defendants in exchange for gross consideration of $600,000. (Pet. at 3.) The gross settlement amount will be allocated as follows:

| Payee or Instrument | Amount | Use of Funds |
|---|---|---|
| Brock & Gonzales, LLP | $199,980 | Payment of attorneys' fees |
| Brock & Gonzales, LLP | $61,995.72 | Payment of attorneys' costs |
| Zenith Insurance Company | $55,000 | Payment of lien for death benefits already received by Plaintiff |
| Structured Settlement Annuity | $272,738 | Monthly payments of $2,250 beginning when Plaintiff turns 18 and continuing for seven years certain<br><br>Lump sum payments of $50,000 at age 18, $100,000 at age 25, $100,000 at age 27, $150,000 at age 30, $250,000 at age 35 |
| Blocked Account | $10,286.28 | Blocked account for the remainder of the net settlement funds that can only be withdrawn through an order of the Court after a showing of good cause until Plaintiff reaches age 18 |
| **Total** | $600,000 | |

See id. at 3-5.

In reviewing minor's compromise petitions, "courts typically consider such information as the relative worth of the settlement amount, the circumstances of the

settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other, similar compromises that have been approved by courts." J.T., 2019 WL 954783, at *2.  Taking all relevant considerations into account, the Court concludes that Plaintiff's proposed net recovery of $283,024.28 (the amount to be paid into the structured settlement annuity plus the remainder to be deposited in the blocked account) is fair, reasonable, and in Plaintiff's best interest considering the facts and circumstances of this case.

First, the proposed Settlement allows for certainty of recovery for Plaintiff, compared with the uncertainty associated with a potential jury trial in this case. Plaintiff's counsel notes that there was a significant risk of "comparative and third-party fault in this matter" due to an investigation into the employer's conduct related to the incident at issue in this case, which could have limited Plaintiff's recovery if the action had proceeded to trial.  (Cirsch Decl. at 5.)  Essentially, there was substantial risk that Plaintiff might have recovered much less than the amount obtained or nothing at all if the case had proceeded to trial.  Additionally, the Settlement as it is currently structured gives Plaintiff the additional assurance of multiple periodic payments to be used once she reaches the age of the majority.

Second, Plaintiff's counsel notes that he is "satisfied with the result obtained for [his] client" given the factors discussed above.  (Cirsch Decl. at 4.)  Although the Court was unable to find caselaw directly analogous to this case (and none were provided by counsel), an independent review of wrongful death cases with similar facts to those at issue here lend support to Plaintiff's counsel's assertion—and confirm that the recovery here is in line with other wrongful death cases within the Ninth Circuit.  See, e.g., Popal v. Nat'l Passenger R.R. Corp., Case No. 15-cv-00553-JSW (KAW), 2016 WL 9114149, at *2-3 (N.D. Cal. Oct. 24, 2016) (concluding that a net recovery of $22,638.87 for each minor appropriate after their father was struck and killed by an Amtrack train appropriate); B.L. v. California, Case No. CV 20-11135-JVS (PVCx), 2022 WL 16888524, at *2 (C.D. Cal. July 27, 2022) (concluding that a net recovery of $52,545.85

for minor child after their father was struck and killed by an Amtrack train was appropriate); Garcia v. Cty. of Kern, Case No.: 1:20-cv-0093 NONE JLT, 2021 WL 3674519, at *7 (E.D. Cal. Aug. 19, 2021) (concluding that annuity payments in excess of $60,000 for each minor after their parents were killed in a vehicle chase with law enforcement were appropriate and collecting net settlement awards in other wrongful death cases), report and recommendation adopted, 2021 WL 3813414 (E.D. Cal. Aug. 26, 2021).

Based upon the above referenced recoveries in similar actions, consideration of the facts, and the risks associated with taking this case to trial, the Court concludes that the proposed net settlement amount of $283,024.28 is fair and reasonable under both California and federal law standards.  The Court therefore **RECOMMENDS** that the proposed settlement amount be approved.

B.      **Method of Disbursement**

Under the California Probate Code, various alternative methods are available for disbursement of the funds related to a settlement that affects a minor.  See Cal. Prob. Code §§ 3602; 3611.  Here, the Settlement Agreement reflects that that the parties have agreed to the purchase of a structured annuity and payments as set forth above, which the Court finds appropriate.  Specifically, the parties agree that Defendant will issue a settlement check in the amount of $272,738 to fund and purchase a structured annuity for Plaintiff.  (See Cirsch Decl., Ex. A at 1.[1])  The check will be made payable to "Pacific Life & Annuity Services, Inc.," which will provide periodic payments to be made by "Pacific Life Insurance Company," rated an A+ Class XV by A.M. Best Company.[2]  (See

---

[1] The Court cites to internally generated pagination rather than the page numbers created by the CM/ECF system here.

[2] The Court's typical protocol is to require that annuities be purchased from an annuity company rated at least "A+" (Superior) by A.M. Best rating service.  See Burns v. United States, Case No. 12-CV-2957-DMS (MDD), 2015 WL 12564299, at *2 n.3 (S.D. Cal. May 13, 2015).

id.; Cirsch Decl., Ex. B at 1.) Periodic payments will be mailed or initiated through an electronic funds transfer directly to Plaintiff. (See Cirsch Decl., Ex. A. at 18.[3]) The Court concludes that the structured annuity is reasonable and in the best interests of Plaintiff. In particular, the structured annuity spreads the distribution of funds over a lengthy period of time and delays the largest lump sum payments until Plaintiff is thirty-five years old, which increases the total payout,[4] and protects the minor from the potential loss of a single lump sum payment upon reaching the age of majority. See, e.g., E.S. v. City of Visalia, Case No. 1:13-cv-1697-LJO-BAM, 2015 WL 6697927, at *3 (E.D. Cal. Nov. 3, 2015) (noting that periodic payments are helpful to avoid potential loss from a lump sum payment when the minor reaches eighteen), report and recommendation adopted, 2015 WL 13215675 (E.D. Cal. Nov. 20, 2015).

Additionally, the Petition provides that the remainder of the settlement proceeds not being used in the structured annuity or to pay for costs ($10,286.28) will be deposited in an account, subject to withdrawal only upon authorization of the Court (i.e., a "blocked account") until Plaintiff turns eighteen. (See Pet. at 4.) This procedure of placing funds in a financial institution subject to withdrawal only by court order complies with the requirements of Section 3611(b) of the California Probate Code, which authorizes the Court, if it is in the best interests of the minor, to approve of settlement funds being deposited "in an insured account in financial institution in this state . . . subject to withdrawal only upon the authorization of the court[.]" The terms of the blocked account properly protect Plaintiff's interests by providing that no withdrawal of the net settlement proceeds can be made from the account absent a court order until Plaintiff reaches eighteen. See, e.g., Star & Crescent Boat Co. v. L.M. by & through Martinez, Case No.: 3:21-cv-00482-WQH-BLM, 2021 WL 4843822, at *5 (S.D. Cal. Oct. 18, 2021) (noting

---

[3] CM/ECF generated pagination cited here.

[4] The structured annuity will result in $839,000 of total payments being made to Plaintiff between the ages of eighteen and thirty-five.

that a blocked account prevents waste or unauthorized disbursement until the minor reaches the age of majority), report and recommendation adopted, 2021 WL 4974612 (S.D. Cal. Oct. 26, 2021).

The Petition's proposed methods of disbursing Plaintiff's net settlement proceeds is fair, reasonable, and complies with both federal and state standards. The structured annuity payments provide an appropriate recovery for Plaintiff that is spread over time without the risk of significant loss, and the blocked account protects against the loss of the excess funds until Plaintiff reaches the age of majority. Accordingly, the Court **RECOMMENDS** that the proposed distribution of Plaintiff's net settlement be approved.

### C. Attorneys' Fees, Costs, and Insurance Lien

In addition to assessing whether the settlement is fair and reasonable, the Court must evaluate the apportionment of attorneys' fees and costs to be paid in the Settlement Agreement. See Cal. Prob. Code § 3601; Cal. R. of Ct. 7.955. Attorneys' fees and costs are typically controlled by statute, local rule, or local customs. See Castro v. United States, Case No.: 19-cv-02240-AJB-JLB, 2022 WL 594545, at *5 (S.D. Cal. Feb. 28, 2022), report and recommendation adopted, 2022 WL 959649 (S.D. Cal. Mar. 30, 2022).

#### 1. Attorneys' fees

In contingency fee cases, attorneys' fees for representing a minor have historically been limited to 25% of the gross recovery. See, e.g., DeRuyver v. Omni La Costa Resort & Spa, LLC, Case No.: 3:17-cv-0516-H-AGS, 2020 WL 563551, at *2 (S.D. Cal. Feb. 4, 2020); Napier by & through Quiroz v. San Diego Cty., No. 3:15-cv-00581-CAB-KSC, 2017 WL 5759803, at *3 (S.D. Cal. Nov. 28, 2017); Welch v. Cty. of Sacramento, No. 2:07-cv-00794-GEB-EFB, 2008 WL 3285412, at *1 (E.D. Cal. Aug. 5, 2008). "[M]ost courts require a showing of good cause to award more than 25% of any recovery" and such an award is "rare and justified only when counsel proves that he or she provided extraordinary services." Schwall v. Meadow Wood Apts., No. CIV. S-07-0014 LKK, 2008 WL 552432, at *1-2 (E.D. Cal. Feb. 27, 2008) (internal quotation marks omitted).

To determine whether a request for attorney's fee is reasonable, the Court may consider factors such as the time and labor required, whether the minor's representative consented to the fee, the amount of money involved, the result obtained, and whether the fee is fixed, hourly, or contingent.  See California R. of Ct. 7.955(b).

Here, Plaintiff's attorneys are seeking a contingency fee of $199,980, which is one third (33.33%) of Plaintiff's share of the gross recovery and exceeds the historical limits allowing twenty-five percent of the gross recovery for cases involving minors. Accordingly, Plaintiff's counsel must provide good cause for the request.  In support of their proposed fees, Plaintiff's counsel cites to a number of factors under California Rule of Court 7.955(b), stating that they have "spent hundreds of hours" collaborating with experts to develop the failure to warn and design defect theories of liability that ultimately led to settlement, conducting investigations into the incident, and working with structured settlement professionals to determine the best approach to disburse the settlement proceeds to Plaintiff.  (Cirsch Decl. at 4.)  Counsel argues that the requested fee is reasonable by noting that they were required to spend "tens of thousands of dollars on experts to develop the failure to warn and design defect theories of liability that led to settlement," and that there was a significant risk of a lower recovery, even after counsel had advanced all of the costs of prosecuting the case to date.  (Id. at 5-7.)  Counsel further explains that Plaintiff's guardian *ad litem* signed a retainer agreement consenting to a forty percent (40%) contingency fee, but that they have agreed to reduce their fees to one third (33.33%) of the recovery, which reflects the nature of contingency fee arrangements in this type of case.  (See Id. at 3, 7.)

Based on the information provided in the declaration attached to the Petition, the Court notes that counsel appears to have expended significant time and resources to obtain a favorable result for their client in this products liability case.  Although discussed in more detail below, it also appears that counsel advanced significant costs in obtaining experts, structuring the annuity payments to maximize the recovery for their client, and negotiating the lien on the settlement proceeds asserted by K&M Press's

worker's compensation insurance company.  Related to the time spent litigating this matter, counsel states that by the time the case settled, depositions had been taken, and counsel spent a significant amount of time presenting the strengths of their case through expert reports in private mediation.  (Cirsch Decl. at 4.)  Moreover, Plaintiff's guardian *ad litem* did sign a retainer agreement consenting to the forty (40%) contingency fee, which counsel subsequently discounted to one third of the gross recovery in this case.  (See Cirsch Decl., Ex. C.)  Accordingly, the Court concludes that a fee award of one third (33.33%) of the gross settlement—slightly more than eight percent over the standard recovery in settlements involving minors—is a reasonable award for counsel's services in this case.  See Clines v. Cty. of San Diego, Case No.: 20cv2504-W(BLM), 2022 WL 16851818, at *4 (S.D. Cal. Nov. 10, 2022) (concluding that a reduction of attorneys' fees to 33% was appropriate when the minor plaintiff's guardian *ad litem* signed a retainer agreement consenting to a 40% contingency fee), report and recommendation adopted, 2022 WL 17097422 (S.D. Cal. Nov. 21, 2022).

### 2.  Litigation costs

In addition to attorneys' fees, Plaintiff's counsel sets forth costs accrued over the course of the litigation totaling $61,995.72.[5]  See Section III.A., supra.  Counsel attaches a ledger of all costs that they have incurred in litigating this matter, which represent, amongst other expenses, one-half of the mediation fees for private mediation to reach a settlement, costs for depositions, and expert fees of over $40,000.  (See Cirsch Decl. at 7; Ex. D.)  Plaintiff's counsel notes that this litigation, which was initiated in April of 2021 in state court, settled after counsel expended substantial time conducting site inspections with experts, conducting additional investigations and discovery, taking depositions, and preparing for mediation through collaboration with experts.  (See Cirsch Decl. at 4.)  This litigation settled after a significant amount of discovery had taken place and after the

---

[5] The Court notes for purposes of comparison that $61,995.72 represents 10.3% of the gross settlement amount in this case.

facts of the case had been thoroughly investigated. (See Id. at 7.) Thus, the Court concludes that the costs incurred are fair and reasonable under the circumstances. See, e.g., Hernandez v. United States, Case No.: 3:19-cv-1457-AHG, 2020 WL 6044079, at *5 (S.D. Cal. Oct. 13, 2020) (concluding that costs of $49,604.05 were reasonable when compared with a gross settlement amount of $625,000 (7.9% of gross settlement)); Clines, 2022 WL 16851818, at *4 (concluding that expert fees and costs of $16,425 were reasonable compared with a gross settlement amount of $75,000 (21.9% of gross settlement).

### 3. Insurance lien

K&M Press maintained worker's compensation coverage through Zenith Insurance Company ("Zenith"), which is obligated to pay Plaintiff $218,307.19 through Mr. Diaz's estate. (Pet. at 3.) Zenith has asserted a lien upon any settlement or judgement rendered in favor of Plaintiff. (See ECF No. 36.) Plaintiff's counsel successfully negotiated post-settlement with Zenith to reduce the lien to $55,000. (See Cirsch Decl. at 3-4.) Given the negotiated lien amount and Plaintiff's guardian *ad litem's* consent to sharing the expense presented by the lien, the Court concludes that this is also a reasonable cost under the circumstances. See, e.g., Clines, 2022 WL 16851818, at *5 (concluding that a medical lien was appropriate when it was negotiated down by the minor plaintiff's counsel and the guardian *ad litem* agreed to the expense).

After reviewing the various litigation costs, the length of time that this case has been pending, as well as the facts and issues in this case, the Court concludes that the fees and costs set forth in the Petition are fair and reasonable, resulting in a settlement that is in the best interests of Plaintiff. The Court accordingly **RECOMMENDS** that the costs and fees set forth in the Petition be approved.

## IV. CONCLUSION

After conducting an independent inquiry and evaluation of the proposed settlement, the Court concludes that the settlement is fair, reasonable, and in the best interests of Plaintiff under both federal and state law standards. Accordingly, the Court

**RECOMMENDS** that Judge Battaglia issue an Order: (1) adopting this Report and Recommendation, (2) approving the proposed settlement, and (3) granting the Petition. (ECF No. 39.) **IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **April 26, 2023**. The document should be captioned "Objections to Report and Recommendation."[6]  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: April 11, 2023

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

---

[6] Although the federal statutory scheme provides for a 14-day objections period to a Magistrate Judge's Report and Recommendation, the undersigned notes that the Petition in this case is unopposed. (ECF No. 40.)  Accordingly, if all parties wish to waive the objections period, they should file a joint stipulation to that effect immediately, to allow the Court to adopt this Report and Recommendation without further delay.  There will be no adverse consequences to any party who files objections or otherwise chooses not to waive the objection period.